RECEIVED

MAR - 9 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| PHI, INC. | CIVIL ACTION NO. 08-1406 |
| VERSUS | JUDGE DOHERTY |
| ROLLS-ROYCE CORPORATION | MAGISTRATE JUDGE HILL |

**MEMORANDUM RULING**

Currently pending before the Court is defendant Rolls-Royce Corporation's ("Rolls-Royce") "Motion for Judgment on the Pleadings ... and/or Motion to Dismiss and/or to Transfer Pursuant to 28 U.S.C. § 1404(A)." [Doc. 42] For the reasons which follow, the motion is GRANTED IN PART and DENIED IN PART.

## I. Background

On August 16, 2007, the pilot of a helicopter operated by PHI lost power after departing from a fixed platform in Eastern Cameron Block 109 and heading toward another platform located at West Cameron Block 98. When the engine lost power, the pilot made an emergency landing in the Gulf of Mexico, utilizing the helicopter's emergency flotation devices.[1] However, "a wave rolled the helicopter into the inverted position," [Doc. 49, p.6] "thus rendering the Helicopter a total loss...." [Doc. 38, ¶ 9]

Thereafter, PHI filed suit in the Fifteenth Judicial District Court of the State of Louisiana. [Doc. 1-1] Defendant timely removed the case to this Court. [Doc. 1-1] Jurisdiction in this matter is premised upon diversity of citizenship. [Doc. 1-1, ¶ 2] All parties agree plaintiff is a citizen of Louisiana, and defendant is a citizen of both Delaware and Indiana. [Doc. Nos. 38, ¶¶ 1,2; 41, p.2]

---

[1] The pilot and passenger were subsequently rescued by the United States Coast Guard.

PHI asserts the accident was caused due to the following:

> Upon information and belief, PHI avers that the failure of the Engine, which was the direct, sole and proximate cause of the Incident in Question and PHI's damages, was caused by the failure of a component part of the Engine, which may include but is not limited to failure of the power turbine outer shaft, the #5 bearing assembly, and/or the third-stage turbine wheel.

[Doc. 38, ¶16] PHI purchased the engine on October 21, 1997; PHI purchased the power turbine outer shaft on March 8, 2007.[2] [Doc. Nos. 42-2, p.2; 38, ¶17; 42-2, p.4] Plaintiff alleges "[t]he Engine was designed, manufactured, constructed and composed by Rolls-Royce."[3] [Doc. 38, ¶ 5] Plaintiff additionally alleges "Rolls-Royce certified the Engine, including each of its component parts, as airworthy at the time of manufacture and sale."[4] [Id. at ¶ 8]

PHI asserts the following claims in its amended complaint: "COUNT I - REDHIBITION", "COUNT II - BREACH OF WARRANTY", "COUNT III - PRODUCT / STRICT LIABILITY", and "COUNT IV - ATTORNEY FEES."[5] [6] [Doc. 38] PHI alleges it incurred damages "including but not limited to: ... [t]he loss of the Helicopter; and ... [r]easonable and necessary attorneys' fees." [Id. at ¶ 18] In the section of the complaint designated "PRAYER," PHI states as follows:

---

[2] According to defendant (and not contested by plaintiff), the engine was manufactured by Rolls-Royce and "delivered to Bell Helicopter Textron Canada on or about August 26, 1997." [Doc. 42-2, p.2] Bell Helicopter Textron Canada then installed the engine into a Bell Helicopter, which "PHI purchased and took delivery of ... on October 21, 1997." [Id.]

[3] Defendant denies that allegation, "except to admit that the engine, as a whole, was designed by Rolls-Royce and was configured to incorporate certain component parts designed and manufactured not only by Rolls-Royce, but also by other entities ...." [Doc. 41, p.2]

[4] Defendant "denies the allegations ... except to admit that Rolls-Royce certified the engine as airworthy as of the time it left the control of Rolls-Royce on October 21, 1997 ...." [Doc. 41, p.2]

[5] PHI states its claims for breach of warranty and products liability are pled "strictly in the alternative to its common law and redhibitory rights." [Doc. 38, ¶¶ 34, 63]

[6] Neither party has addressed plaintiff's separate count (Count IV) for attorney fees. Accordingly, that "count" is not addressed in this ruling.

>WHEREFORE, Plaintiff prays for all just and equitable relief to which it may be entitled to under the facts of this case, including, without limitation, recovery against Rolls-Royce under any and all express and implied warranties, under contract or at law, as well as under any and all applicable products liability statutes, acts or laws, including but not limited to the Louisiana Products Liability Act, maritime products liability law, any applicable tort law and the laws of redhibition, and all remedies available thereunder.

[Doc. 38, p.16][7]

In the pending motion, Rolls-Royce argues as follows:

>[PHI's] claims asserted in its Original Complaint ... are barred by the "economic loss" doctrine established in *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 ... (1986)....[8] Nor does PHI escape the *East River* doctrine by promoting their second theory of the cause of the accident, that theory concerning an alleged failure of a Power Turbine Outer Shaft that PHI purchased in March 2007 and itself installed in the helicopter. ...[T]he warranty agreements ... relating to the original sale of the entire engine ... and the spare part warranty applicable to the sale of the Power Turbine Outer Shaft ... provide that any claims of PHI related to damage caused to said product by the product itself are limited to replacement of the part which may be determined to be found not to meet warranty specifications. Specifically precluded by said warranties are any claims for any consequential damages such as asserted in this litigation by PHI. Further, any litigation brought by PHI relating to claims in warranty must, according to those agreements, be brought in a court in the State of Indiana. Therefore, should any warranty claims asserted by PHI survive

---

[7] Additionally, PHI requests the following relief in the last paragraph of each section setting forth an alleged claim: "WHEREFORE, PHI requests judgment in its favor, in an amount that will fairly compensate it for losses, damages, and expenses, for prejudgment and post-judgment interest as provided by law or agreement, for costs of this action, reasonable attorney fees, exemplary damages and for all other proper relief which is just and/or equitable under the circumstances." [Doc. 38, ¶¶ 31, 50, 64, 68]

[8] Presumably, defendant is referring to the claims of "negligence," "negligent undertaking," "product/strict liability," "redhibition," and "attorney fees," asserted by plaintiff in its original petition filed in state court. However, after removal, but prior to the filing of this motion, plaintiff amended the complaint, and the amended complaint did not refer to, or incorporate, the original petition filed in state court. The amended complaint does not include claims for "negligence" or "negligent undertaking" (although defendant states it does contain said claims [Doc. 42-2, p.3]), as the sections addressing those claims do not appear in the amended complaint. Accordingly, those claims are not before this Court. *See e.g.* King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994)("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.") Additionally, PHI affirmatively states in its opposition memorandum that its "Second Amended Complaint ... does not contain any causes of action for negligence or negligent undertaking." [Doc. 49, p.8]

rulings made by this honorable Court regarding this Motion for Judgment on the Pleadings, which seeks dismissal of all claims asserted by PHI, whether in tort, redhibition, or otherwise, should all claims but a warranty claim related to the power turbine outer shaft remain subsequent to this court's ruling on this motion, respondent seeks, in the alternative, to transfer it, pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of Indiana, Indianapolis Division, pursuant to the contractual forum selection clause.

[Doc. 42-2, pp. 3-5][9]

## II. Standard of Review

"After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "A motion brought pursuant to FED. R. CIV. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." Hebert Abstract Co., Inc. v. Touchstone Properties, Ltd., 914 F.2d 74, 76 (5th Cir. 1990). "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." Ackerson v. Bean Dredging LLC, 589 F.3d 196, 209 (5th Cir.2009). To survive a Rule 12(c) motion, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)). In ruling on the motion, "the district court is confined to the pleadings and must accept all allegations contained therein as true." Hughes v. Tobacco Inst., Inc., 278 F.3d 417, 420 (5th Cir.2001). However, "the court may review

---

[9]At times, defendant appears to argue (although the briefing is not entirely clear on this point) that the warranty covering the engine had "long-expired," but the warranty on the Power Turbine Outer Shaft is still in effect. Nevertheless, defendant asks that all claims (including any claim for breach of warranty on the Power Turbine Outer Shaft) be dismissed. Alternatively, should a claim for breach of warranty on the power turbine outer shaft remain after resolution of this motion, defendant moves this Court to transfer that specific claim to another court. [Doc. 42-2, pp. 3, 16-19] (Defendant never states what relief it would seek, were the Court to find any claims remain other than the warranty claim on the power turbine outer shaft. Presumably, defendant would seek a transfer of any and all such claims, but that is only this Court's presumption.)

the documents attached to the motion to dismiss, *e.g.*, the contracts in issue here, where the complaint refers to the documents and they are central to the claim." Kane Enterprises v. MacGregor (USA) Inc., 322 F.3d 371, 374 (5th Cir. 2003).

### III. Applicable Law and Analysis

Defendant states as follows:

> As a threshold matter, the General Maritime Law governs legal claims arising out of flights between one offshore platform to another. [FN2] As the United States Supreme Court held in *Offshore Logistics v. Tallentire*, 477 U.S. 207, 219, 106 S.Ct. 2485, 2492:
>
>> Even without this statutory provision, admiralty jurisdiction is appropriately invoked here under traditional principles because the accident occurred on the high seas and in furtherance of an activity bearing a significant relationship to a traditional maritime activity. *See Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). Although the decedents were killed while riding in a helicopter and not a more traditional maritime conveyance, that helicopter was engaged in a function traditionally performed by waterborne vessels: the ferrying of passengers from an 'island,' albeit an artificial one, to the shore. *Id.*, at 271, and n. 20, 93 S.Ct., at 505, and n. 20.
>
>> FN2: ***Notwithstanding the stated basis of jurisdiction in this Court is diversity jurisdiction, 28 U.S.C. § 1332, maritime law is the substantive law to apply in this dispute.*** *See Petroleum Helicopters, Inc. v. AVCO Corporation*, 930 F.2d 389, 392 fn. 5 (5th Cir. 1991).
>
> Thus, under *Tallentire*, because this incident occurred en route from one fixed platform to another fixed platform, and the helicopter was engaged in traditional maritime conveyance, the General Maritime Law applies to PHI's claims against Rolls-Royce.

[Doc. 42-2, pp. 5-6 (emphasis added)]

Defendant paints with an overly broad brush and fails to make the distinction between and among the various claims involved, particularly between those claims grounded in tort and those grounded in contract or quasi-contract. Substantive maritime law, as a matter of law, cannot be said

to apply to *all* claims asserted in this matter. First, the Court notes <u>Offshore Logistics</u> involved *only* a tort claim; no *contractual* claims were asserted. <u>Id.</u>; *see also* <u>Alleman v. Omni Energy Services Corp.</u>, 580 F.3d 280, 284 (5th Cir. 2009). In this matter, the *only* claim that lies in tort is for products liability; all other claims arise out of contract or quasi-contract.

A.  **Products Liability**

As to plaintiff's claim for "product/strict liability," this Court agrees admiralty jurisdiction exists, and substantive maritime law applies. It is well-settled where a tort is maritime in nature, admiralty jurisdiction exists, and as to maritime torts, maritime substantive law should apply. <u>Employers Ins. of Wausau v. Suwannee River Spa Lines, Inc.</u>, 866 F.2d 752, 759 (5th Cir. 1989). Whether a tort is maritime in nature turns upon the application of the "situs" (*i.e.* the predicate event occurs in navigable waters) and the "nexus" (*i.e.* whether the incident has a potentially disruptive impact on maritime commerce). <u>Executive Jet Aviation v. City of Cleveland</u>, 409 U.S. 249 (1972); <u>Green v. Vermilion Corp.</u>, 144 F.3d 332, 336 (5th Cir. 1998). In this matter, just as in <u>Offshore Logistics</u>, "admiralty jurisdiction is appropriately invoked here under traditional principles because the accident occurred on the high seas and in furtherance of an activity bearing a significant relationship to a traditional maritime activity." <u>Offshore Logistics</u> at 219. Accordingly, maritime jurisdiction would exist and substantive maritime law would apply to plaintiff's claim for products liability. <u>Employers Ins. of Wausau</u> at 759.

The Supreme Court first "recogniz[ed] products liability, including strict liability, as part of the general maritime law" in <u>East River S.S. Corp. v. Transamerica Delaval, Inc.</u>, 476 U.S. 858 (1986). However, in that case the Supreme Court ultimately held a maritime plaintiff may not maintain a tort cause of action against a manufacturer "when a defective product purchased in a commercial transaction malfunctions, injuring only the product itself and causing purely economic

loss." Id. at 876. The Court reasoned:

> Obviously, damage to a product itself has certain attributes of a products-liability claim. But the injury suffered - the failure of the product to function properly - is the essence of *a warranty action*, through which a contracting party can seek to recoup the benefit of its bargain.
>
> ....
>
> ... Therefore, a claim of a nonworking product can be brought as a *breach-of-warranty action*. Or, if the customer prefers, it can reject the product or revoke its acceptance and sue for breach of contract.

East River at 867-68, 872 (emphasis added).[10]

In this matter, it appears plaintiff implicitly concedes it cannot maintain a cause of action against Rolls-Royce pursuant to products liability, as plaintiff does not contest defendant's position that the only injury, sustained by PHI, was to the product manufactured by Rolls-Royce, and the injury caused only economic loss. In its opposition memorandum, plaintiff does not address defendant's argument that plaintiff's products liability claim is barred by the East River economic loss doctrine. Further evidence of plaintiff's concession on this issue is found where plaintiff states, "PHI has Plead Enough Facts to Show that its Claims are Plausible on their Face because the Breach of Warranty and Redhibition Claims, at least, are not Barred by the *East River* Doctrine." [Doc. 49, p.8] However, most important to the Court's determination on this issue is that a review of

---

[10]"The Court in East River noted in a commercial setting, parties are free to bargain for the terms of their contract, including warranties and risk allocation:

> Contract law, and the law of warranty in particular, is well suited to commercial controversies of the sort involved in this case because the parties may set the terms of their own agreements. The manufacturer can restrict its liability, within limits, by disclaiming warranties or limiting remedies. In exchange, the purchaser pays less for the product. Since a commercial situation generally does not involve large disparities in bargaining power, we see no reason to intrude into the parties' allocation of the risk.

Id. at 872-73 (citations omitted).

plaintiff's complaint reveals plaintiff has alleged only damage to the defective product itself, and seeks damages only for economic losses due to the allegedly defective product.[11] Thus, accepting plaintiff's factual allegations contained in its complaint as true, and viewing those facts in the light most favorable to the plaintiff, this Court finds plaintiff may not maintain a claim for products liability in this suit as a matter of law. Accordingly, plaintiff's claim for damages premised upon products liability is DISMISSED WITHOUT PREJUDICE. By way of this dismissal, admiralty jurisdiction and the application of maritime substantive law, premised upon this claim, are lost.

**B.    Breach of Warranty and Redhibition**

With the loss of the tort claim, contrary to defendant's assertion, admiralty jurisdiction and the application of maritime substantive law over plaintiff's claims for "breach of warranty" and "redhibition" is in grave question, as those claims arise out of contract rather than tort.[12] Based upon

---

[11] The only possible argument plaintiff has made concerning products liability is found in a stand-alone paragraph in its opposition memorandum, containing merely the following: "Furthermore, PHI shows that *East River* does not apply where a defective product damages 'other property' in addition to the product itself. *See, e.g. Shipco 2295, Inc. v. Avondale Shipyards, Inc.*, 825 F.2d 925, 928 (5th Cir. 1987)." [Doc. 49, p.9] While the Court agrees this is an accurate statement of law, plaintiff has not identified any "other property" which it alleges was damaged in this matter, nor does it appear any "other property" was damaged *as a matter of law*. *See e.g.* Petroleum Helicopters, Inc. v. Avco Corp., 930 F.2d 389 (5th Cir. 1991)(Emergency flotation device which failed, causing damage to helicopter, was a "component part" of the helicopter and not "other property," and therefore the owner could not maintain cause of action for products liability under maritime tort law); East River at 867("'Since all but the very simplest of machines have component parts, [a contrary] holding would require a finding of 'property damage' in virtually every case where a product damages itself. Such a holding would eliminate the distinction between warranty and strict products liability.'")(quoting Norther Power & Engineering Corp. v. Caterpillar Tractor Co., 623 P.2d 324, 330 (Alaska 1981)); ERA Helicopters v. Bell Helicopter textron, Inc., 696 F.Supp. 1096 (E.D.La. 1987). *See also* Petroleum Helicopters, Inc. v. Avco Corp., 930 F.2d 389, 393, n.9 (5th Cir. 1991)(question of what constitutes "other property" is a legal question - not a factual determination.)

[12] The codal articles addressing redhibition are contained in Title VII of Book III, which addresses sales. *See* LA. CIV. CODE arts. 2520 ("Warranty against redhibitory defects"), *et seq.* Sales are a nominate contract. LA. CIV. CODE arts. 1914, 2438. *See also* Datamatic, Inc. v. International Business Machines Corporation, 795 F.2d 458, 462 (5th Cir. 1986)("The action in redhibition is inherently contract-based. Both the theory of the action and the relief available differ from those applicable to a suit in tort."); Austin v. North American Forest Products, 656 F.2d 1076, 1083 (5th Cir. 1981)(Under

that which is currently before the Court, it appears unlikely any of the claims arising out of the purported contracts or warranties which might be involved in this matter are maritime in nature. *See e.g.* East River at 872, n.7 ("If the charterers' claims were brought as breach-of-warranty actions [rather than products liability actions], they would not be within the admiralty jurisdiction. Since contracts relating to the construction of or supply of materials to a ship are not within the admiralty jurisdiction, neither are warranty claims grounded in such contracts. State law would govern the actions."); North Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co., 249 U.S. 119, 222-23 (1919)("It must be taken to be the settled law of this court that while the civil jurisdiction of the admiralty in matters of tort depends upon locality, whether the act was committed upon navigable waters, in matter of contract it depends upon the subject-matter, the nature and character of the contract ...; the true criterion being the nature of the contract, as to whether it have reference to maritime service or maritime transactions. Whether or not maritime law is applicable to the contract at issue has not been addressed by either party."). As stated in Alleman v. Omni Energy Services Corp.:

> Maritime jurisdiction covers torts that occur on the high seas and bear a significant relationship to traditional maritime activity. Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 268, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). Conversely, maritime contract law applies based on the nature and character of the contract, rather than looking to where it occurred. Norfolk, 543 U.S. at 24, 125 S.Ct. 385. In Executive Jet, the Supreme Court specifically addressed both whether maritime tort law and other maritime law applied to aircraft. 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454. **The Court stated clearly that "in contexts other than tort, Congress and the courts have recognized that ... aircraft are not subject to maritime law."** Id. at 270, 93 S.Ct. 493; *see also* id. at 261-62, 93 S.Ct. 493 (listing the numerous ways in which Congress and the courts have excluded aircraft from typical maritime

---

Louisiana law, damages caused by breach of warranty in a contract of sale are regarded as founded upon redhibition, and although a suit for breach of contract is generally subject to a ten-year prescriptive period, such prescriptive period, applicable to breach of contract actions, does not apply to suits for damages for breach of warranty in a contract of sale).

> law). "Through long experience, the law of the sea knows how to determine whether a particular ship is seaworthy, and it knows the nature of maintenance and cure. It is concerned with maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage." Id. at 270, 93 S.Ct. 493. These rules and concepts "are wholly alien to air commerce, whose vehicles operate in a totally different element, unhindered by geographical boundaries and exempt from the navigational rules of the maritime road." Id. "The matters with which admiralty is basically concerned have no conceivable bearing on the operation of aircraft, whether over land or water." Id. **This court has also clearly held that helicopters are not "vessels" for purposes of maritime commerce, even if they fly over the sea.** Barger v. Petroleum Helicopters, Inc., 692 F.2d 337, 339-40 (5th Cir.1982).

580 F.3d 280, 285 (5th Cir. 2009)(emphasis added). Accordingly, it appears jurisdiction over plaintiff's claims for redhibition and breach of warranty would arise under 28 U.S.C. § 1332 (diversity of citizenship) - *i.e.* the grounds upon which defendant removed the case to this Court - rather than 28 U.S.C. § 1333 (admiralty jurisdiction), as defendant argues, and the question of which state's substantive law might apply to those purported contracts or warranties remains at issue. *See* East River at 872, n.7 ("[I]f the charterers' claims were brought as breach-of-warranty actions, they would not be within the admiralty jurisdiction ... [s]tate law would govern the actions.").

Because jurisdiction over plaintiff's contractual claims is premised upon 28 U.S.C. § 1332 (diversity of citizenship), state law governs the substantive issues of law. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). As a federal court sitting in diversity, this Court applies Louisiana's choice of law rules to determine which state's law should apply to the breach of warranty and redhibition theories asserted by plaintiff. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Louisiana's choice of law rules are codified in Book IV (entitled "Conflict of Laws") of the Louisiana Civil Code. Louisiana Civil Code Article 3540, entitled "Party autonomy," generally allows contracting parties the freedom to choose which state's law will govern disputes arising out of the contract. This article provides as follows:

> All other issues of conventional obligations [besides form and capacity] are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537.

Louisiana Civil Code Article 3537, in turn, sets forth the general rule in Louisiana, applicable to conventional obligations:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

Louisiana Civil Code Article 3515 sets forth the "general and residual rules" applicable to all types of cases (as opposed to the rules pertaining only to "conventional obligations," which are set forth in articles 3537 through 3541). Article 3515 provides:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

In this matter, defendant points the Court to several express, written warranties, which it argues govern the parties' rights and obligations in this matter, namely: (1) a document attached as "Exhibit A" to defendant's Answer to the Complaint, entitled "Allison Model 250-C40/C47 Series

-11-

New Original Equipment Engine Warranty and Disclaimer Summary," which defendant asserts is the warranty agreement which applies to the original engine purchased by PHI in 1997[13]; (2) a document attached as "Exhibit B" to its Answer, entitled "Rolls-Royce Model 250 Spare Engine/Module/Part," which defendant asserts is the warranty which applies to the Power Turbine Outer Shaft purchased by PHI in 2007[14]; and (3) a document attached as "Exhibit C" to its Answer, entitled "TERMS AND CONDITIONS OF SALE," which defendant characterizes as the "Aviall Terms and Conditions of Sale of the Power Turbine Outer Shaft by Aviall to PHI."[15] [Doc. Nos. 41-1, 2 and 3; 42-2, pp. 3, 4, 18] Additionally, the Court notes Exhibit B ("Rolls-Royce Model 250 Spare Engine/Module/Part") states the law of the State of Indiana governs any dispute arising out of the "Limited Warranty" and contains a forum selection clause whereby the buyer (who is not named) agrees "[a]ny controversy or claim arising out of or relating to this Limited Warranty or breach thereof shall be litigated only in the Circuit or Superior Courts of Marion County, Indiana or the United States District Court for the Southern District of Indiana, Indianapolis Division." Exhibit C (which defendant characterizes as the "Aviall Terms and Conditions of Sale of the Power Turbine Outer Shaft by Aviall to PHI") states "[t]his sales agreement shall be performed in the city of Dallas, Dallas County, Texas and shall be governed by the Uniform Commercial Code as adopted in the State of Texas...."

---

[13] Defendant states, "Without belaboring the history of various corporate purchases and takeovers, Rolls-Royce acquired Allison Engine Company in 1995. Although Rolls-Royce manufactured the engine the Allison name continued to appear on various warranties for sometime after the acquisition during the transition of the companies." [Doc. 42-2, p.15, n.4]

[14] PHI appears to argue Rolls Royce provided it with an implied warranty when it states, "ROLLS-ROYCE certified and represented that the Power Turbine Outer Shaft should last indefinitely." [Doc. 49, p.6]

[15] Defendant additionally notes this document "makes reference to the manufacturer's warranty." [Doc. 42-2, p.18]

Defendant argues "[b]ecause the warranty period [on the engine] has long-expired (and PHI will not suggest the contrary, Rolls-Royce is entitled to a complete dismissal of PHI's claims. [Doc. 42-2, p. 16] The only caselaw defendant cites in support of its position is a district court case from the Eastern District of Louisiana, namely ERA Helicopters, Inc. v. Bell Helicopter Textron, Inc., 696 F.Supp. 1096 (E.D.La. 1987). However, that case applied *Louisiana law* to the contractual claims without discussion. Here, it is not at all clear Louisiana law will necessarily apply to the contractual claims, particularly as at least two of the contracts provided by defendant on their face purport to contain contrary choice of law provisions, namely, one states Indiana law is to apply, another states "the Uniform Commercial Code as adopted in the State of Texas" shall apply. The third appears to contain no choice of law provision at all, although no party has stated whether or not any of the three documents before the Court constitute the entirety of any of the three purported contracts. As the parties in this matter are citizens of different states and both hold themselves out as companies engaged in international business[16], it is not at all clear, from what is before the Court at this time, which state's law governs the various, purported contracts.

Moreover, contrary to Rolls-Royce assertion, PHI does appear to raise issues of fact as to whether or not the warranty period on the engine had "long-expired," and whether or not the warranty waivers are enforceable, when it states:

> 34....PHI would show that the warranty (and/or warranty waivers) claimed by Rolls Royce - to the extent it may be enforceable against PHI - for the Subject PT Outer Shaft would had [sic] not expired as of the time of the Incident in Question.

---

[16]*See* www.phielico.com/General_Information.html ("PHI has a long history in the Global Marketplace. In addition to operations in the United States, the company has operated in 43 foreign countries and continues to operate for customers across the globe."); www.rolls-royce.com ("Rolls-Royce is a global business providing integrated power systems for use on land, at sea and in the air.") *See* Hebert at 76 (On a motion for judgment on the pleadings, in addition to the pleadings, the Court may also look to any judicially noticed facts.)

> 35.... PHI would show that any warranty or damages limitation clause or provision claimed by Rolls Royce is not legally enforceable against PHI because it was not part of the contract for sale of the Engine, the #5 bearing, the third-stage turbine wheel and/or the Subject PT Outer Shaft.
>
> ...
>
> Accepting these well-pleaded material allegations of PHI as true, there are, on the face of the pleadings, material facts in dispute about whether and when PHI received any limited warranties from Rolls-Royce or its authorized parts distributors; which, if any warranties apply to the transactions at issue in this litigation; the terms and conditions [of] any warranties that may apply; and/or the relationship of any alleged warranties to PHI's cause of action for breach of warranty.

[Doc. 49, pp. 12, 14; *see also* Doc. 38, p.11][17] PHI also appears to raise an issue of material fact as to whether it even received a warranty at all for the power turbine outer shaft when it notes:

> Two versions of a "Rolls-Royce Model 250 Spare Engine/Module/Part Limited Warranty" have been submitted by Rolls-Royce in this litigation. One, Rec. Doc. #30-2, was submitted as an exhibit to Defendant's Memorandum in Opposition to PHI's Motion for Leave to File First Amended Complaint. The other, Rec. Doc. #41-3, was submitted as an exhibit to Defendant's Answer and Defenses to Second Amended Complaint. Rec. Doc. #41-3 has blanks for "Warranty Policy No." and "Activation Date," neither of which is filled in. Rec. Doc. #30-2 has no such blanks. It is unknown which version ROLLS-ROYCE claims that PHI received with the Power Turbine Outer Shaft.

[Doc. 49, p.11, n.14]

Because there appear to be contested issues of fact, and because the Court is unable to determine, from what currently is before it, the law applicable to the various warranties in this matter[18], the Court DENIES the motion for judgment on the pleadings as to plaintiff's claims for

---

[17] However, the Court notes PHI (like Rolls-Royce) is also rather vague and evasive on this issue, and it is unclear to the Court whether PHI actually contests Rolls-Royce's argument that any warranty on the engine (as opposed to the Power Turbine Outer Shaft) is expired. The majority of PHI's argument on the warranty claims appears to pertain to the Power Turbine Outer Shaft, rather than the engine itself.

[18] Plaintiff appears to be of the opinion Louisiana law applies to the warranty provisions, as it has supported its arguments with the Louisiana codal articles applicable to redhibition; as discussed above, defendant appears to argue admiralty law applies to the claims. While perhaps the result would be the same under any potentially applicable law (*e.g.* Louisiana, Indiana, Texas, etc.), that issue is for the parties to address, not this Court.

redhibition and breach of warranty WITHOUT PREJUDICE.

**C.     Motion to Transfer**

Defendant states:

> In the alternative, should this court find that only a warranty claim remains after consideration of all claims asserted by PHI, mover respectfully suggests that this Court should dismiss PHI's Second Amended Complaint or transfer this action to the United States District Court for the Southern District of Indiana, Indianapolis Division because of the forum selection clause contained in the Limited Warranty.

[Doc. 42-2, p.19][19] Defendant next cites language from Exhibit B (the "Rolls-Royce Model 250 Spare Engine/Module/Part," which defendant asserts is the warranty which applies to the Power Turbine Outer Shaft) and then argues as follows:

> Forum selection clauses are presumptively valid and enforced. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15, 92 S.Ct. 1907, 1916 (1972)("Thus, in the light of present-day commercial realities and expanding international trade we conclude that the forum clause should control absent a strong showing that it should be set aside.") *Also see Cherokee Pump & Equipment, Inc. v. Aurora Pump*, 38 F.3d 246 (5th Cir. 1994). Under Louisiana law too, forum selection clauses are prima facie valid and the party seeking to set aside a forum selection clause has a heavy burden. *See generally Case Atlantic Co., v. Blount Bros. Const., Inc.*, 42,251 (La.App. 2 Cir. 6/20/07); 960 So.2d 1274, 1277; *Beevers & Beevers, L.L.P. v. Sirgo*, 06-841. *5 (La.App. 5 Cir. 2/27/07); 953 So.2d 840, 842.
>
> Therefore, even if this Court were to deny Rolls-Royce's motion for judgment on the pleadings with regard to the warranty claims, this action should either be dismissed or transferred to the United States District Court for the Southern District of Indiana, Indianapolis Division, pursuant to 28 U.S.C. § 1404(a).

[Doc. 42-2, p.20]

First, it must be noted, "Federal law [and not the law of Louisiana] applies to determine the enforceability of forum selection clauses in both diversity and federal question cases." <u>Alliance Health Group, LLC v. Bridging Health Options</u>, LLC 553 F.3d 397, 399 (5th Cir. 2008)(quoting

---

[19]As previously noted, defendant's brief is silent as to what relief it would seek, were the Court to find any claims remain other than the warranty claim on the power turbine outer shaft.

Braspetro Oil Servs. Co. v. Modec (USA), 240 Fed.Appx. 612, 615 (5th Cir. 2007)(unpublished)). Additionally, while "the Bremen case may prove 'instructive' in resolving the parties' dispute," it does not control the issue. Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 28-29 (1988). Rather, 28 U.S.C. § 1404(a) controls defendant's request to enforce a choice of venue clause.[20] Id.

28 U.S.C. § 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The decision to transfer is within the sound discretion of the district court, determined by an individualized, case-by-case consideration of convenience and fairness. Stewart Org v. Ricoh Corporation, 487 U.S. 22, 29 (1988). Courts must perform a two-prong analysis before granting a motion to transfer venue. The first inquiry is whether the proposed transferring district is one in which the action originally could have been brought. The second inquiry is whether the transfer of venue will serve the convenience of the parties and the interests of justice. In Re Volkswagon AG, 371 F.3d 201, 203 (5th Cir. 2004).

In the Fifth Circuit, a determination of "'convenience' turns on a number of private and public interest factors, none of which are given dispositive weight." Id. Private concerns include:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.

Id. Public factors include:

> (1) the administrative difficulties from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the

---

[20] The Court notes defendant does not appear to argue this case should be transferred on the basis of improper venue pursuant to 28 U.S.C. § 1406(a), as no reference is made in the briefing to that statute, nor has defendant ever objected to venue being improper in this Court. If such were the case, the analysis would differ. *See e.g.* Jackson v. West Telemarketing Corp. Outbound, 245 F.3d 518, 523-24 (5th 2001).

>law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

Id.

In this matter, defendant has failed to address any of the factors set forth above, as its only argument is "[f]orum selection clauses are presumptively valid and enforced." [Doc. 42-2, p.20] Accordingly, the Court finds defendant has failed to carry its burden of proof, and therefore, the motion to transfer venue is DENIED WITHOUT PREJUDICE.

Should either party choose to file any additional dispositive motion(s) on the contractual claims addressed in this Ruling at a later time, the following issues **must be addressed**, or the motion will be denied[21]:

- The law applicable to any purported contract or warranty based upon any alleged contract (it would seem the most expedient manner in which to proceed would to have this issue resolved prior to addressing any other contractual claims or issues, unless, of course, a party can show the result would be the same under any and all potentially applicable law or laws, or the parties can stipulate to the applicable law as to each claim addressed)

- The interplay of the two, or more, purported contracts and/or warranties, one of which contains an Indiana choice of law provision, the other containing a U.C.C. (as adopted in Texas) choice of law provision

Defendant's motion for leave to file a reply memorandum is DENIED [Doc. 50], as a review of defendant's proposed motion reveals it is primarily repetitive of defendant's original motion, and the few sentences which are not repetitive are unhelpful to defendant's position, and more importantly, unhelpful to the Court's resolution of the pending motion. Plaintiff's motion for leave to file a sur-reply [Doc. 58] is DENIED, as the arguments made therein are premature, until a determination as to the law applicable to each claim is determined.

Finally, the Court notes discovery in this matter was stayed by the Magistrate Judge, "with

---

[21]The parties are on notice that this Court will merely deny, as a theshold matter, any motion which does not fully address the issues noted by the Court.

the exception of discovery directed towards the authenticity and validity of the warranty attached to Rolls' answer," and thus, this matter likely is not in a proper posture to be tried on its currently scheduled trial date of April 12, 2010.[22] [Doc. 27; see also Doc. 57] Accordingly, the pre-trial conference scheduled for March 26, 2010 at 10:00 a.m. is hereby CONVERTED to a telephone status conference. At the conference, the parties are to be prepared to reset the trial of this matter.

### IV. Conclusion

Due to the foregoing, defendant's "Motion for Judgment on the Pleadings ... and/or Motion to Dismiss and/or to Transfer Pursuant to 28 U.S.C. § 1404(A)" [Doc. 42] is GRANTED IN PART and DENIED IN PART. The motion is granted to the extent is seeks dismissal of plaintiff's claim for products liability, and denied to the extent it seeks dismissal of plaintiff's claims for redhibition and breach of warranty, as well as to the extent it seeks dismissal of plaintiff's claim for "attorney fees," as neither party has addressed any such claim.[23] Additionally, defendant's motion for leave to file a reply memorandum is DENIED [Doc. 50], and plaintiff's motion for leave to file a sur-reply [Doc. 58] is DENIED. Fianlly, the pre-trial conference scheduled for March 26, 2010 at 10:00 a.m. is hereby CONVERTED to a telephone conference, at which time a continuance of the currently scheduled trial date will be discussed.

THUS DONE AND SIGNED at Lafayette, Louisiana, this ___9___ day of March, 2010.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[22] After conferencing with this Court, the Magistrate Judge advised the parties, "Should Judge Doherty deny the pending Rule 12(c) Motion, the parties are advised the court will allow adequate discovery prior to trial." [Doc. 57]

[23] As earlier noted, plaintiff has identified Count IV of it's complaint as a stand-alone claim for attorney fees. Neither party addressed the claim in its briefing.